```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       WESTERN DIVISION
```

In re: Kroger Company              ) Case No. 1:01-CV-265
Securities Litigation,             )

O R D E R

       This matter is before the Court on a motion to dismiss filed by Defendants Kroger Company and Joseph A. Pichler (Doc. No. 19). For the reasons that follow, Defendants' motion to dismiss is well-taken and is **GRANTED**.

I. Factual Background

       This case is a consolidated securities fraud action in which Plaintiffs allege that Kroger Company ("Kroger") issued materially misleading statements regarding its earnings and results of operations between December 5, 2000 and March 2, 2001. Plaintiffs assert claims against Kroger pursuant to Section 10b(5) of the Exchange Act, 15 U.S.C. § 78j(b), SEC Rule 10b-5, and 17 C.F.R. § 240.10b-5. Claims for control person liability are asserted against Defendant Joseph A. Pichler, Kroger's Chief Executive Officer and Chairman of the Board of Directors, pursuant to 15 U.S.C. § 78t(a). On February 28, 2002, the Court entered an order (Doc. No. 12) consolidating this case with Knopper v. Kroger Co., Case No. 1:01-CV-343. Thereafter,

Plaintiffs filed the instant consolidated class action complaint (Doc. No. 15). Kroger now moves to dismiss the consolidated class action complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that it fails to plead scienter with the particularity required by the Private Securities Litigation Reform Act ("PSLRA"). Kroger further contends that the alleged misleading statements or omissions about which Plaintiffs complain were not material as a matter of law. Defendant Pichler then moves to dismiss the control person liability claims against him as being derivative of the claims versus Kroger.

The facts, as alleged in the complaint, are fairly straightforward. In October 1998, Kroger announced that it intended to acquire Fred Meyer, Inc., which operated a large chain of supermarkets in the western United States, in a merger transaction. Consolidated Complaint ¶¶ 2, 15, 16. Kroger shareholders approved the deal in April 1999 and the Federal Trade Commission gave its blessing to the merger in May 1999. Id. ¶¶ 18-19.

In June 1999, Kroger announced that its earnings for the first quarter of fiscal year 1999 were up approximately 20% over the same quarter in fiscal year 1998. Earnings per share were reported at $.54 per share, compared to $.45 the prior year. Id. ¶ 20. In September 1999, Kroger announced that earnings in

the second quarter were up almost 26%, at $.24 per share, compared to $.19 per share in this quarter the previous year. Id. ¶ 24.  In December 1999, Kroger announced that its earnings for the third quarter of fiscal year 1999 were up approximately 33%, to $.24 per share, compared to $.18 per share the previous year.  Id. ¶ 31.  In March 2000, Kroger announced that its earnings for the fourth quarter of fiscal year 1999 were up approximately 26%, to $.39 per share.  Id. ¶ 38.  In June 2000, Kroger announced that its earnings for the first quarter of 2000 were up approximately 22%, to $.33 per share.  Id. ¶ 41.  In September 2000, Kroger announced that earnings for the second quarter of 2000 were up 17%, to $.28 per share.  Id. ¶ 47.

      The consolidated complaint contends that the above numbers inaccurately portrayed an optimistic outlook on Kroger's financial situation following the merger with Fred Meyer, Inc. According to the complaint, however, in September 2000, Kroger officials learned that Ralphs, another chain of stores within the Fred Meyer division, had knowingly misstated its earnings in violation of several Generally Accepted Accounting Principles ("GAAP") for all of 1998 and 1999, and the first two quarters of 2000.  Id. ¶ 3, 4, 58.  Kroger, however, did not publically report or announce the problem within the Fred Meyer division until March 2001.  Id. ¶ 58.

      On March 5, 2001, Kroger issued a press release which

stated in pertinent part:

> The Company announced that it will restate earnings by minor amounts for fiscal 1998, fiscal 1999 and the first two quarters of 2000. The intentional nature of the accounting activities requires earnings to be restated in conformity with generally accepted accounting principles.

Id. ¶ 58. According the complaint, after adjusting for one time items, Kroger's earnings were amended as follows:

|         | Reported EPS | Restated EPS |
|---------|--------------|--------------|
| FY 1999 | $.74         | $.73         |
| FY 1998 | $.58         | $.59         |
| Q2 2000 | $.26         | $.25         |
| Q1 2000 | $.12         | $.12         |
| Q4 1999 | $.29         | $.27         |
| Q3 1999 | $.15         | $.15         |
| Q2 1999 | $.06         | $.06         |
| Q1 1999 | $.24         | $.25         |

Id. ¶ 59. As can be seen from this chart, the restatements resulted in a one cent decrease in earnings per share for 1999 and a one cent increase in earnings per share in 1998. With regard to the individually identified quarters, the restatements resulted in a one cent decrease in earnings per share in one quarter, a two cent decrease in earnings per share in one quarter, a one cent increase in earnings per share in one quarter, and no change in earnings per share in the remaining three quarters.

4

The day before the announcement, Kroger stock closed at $24.32 per share. <u>See</u> Doc. No. 19, Ex. 5.[1] The day of the announcement, Kroger stocked closed at $23.70 per share, a drop of $.62 per share. The day after the announcement, Kroger stock dropped another $.70, from $23.70 per share to $23.00 per share. By March 7, two days after the announcement, the price of Kroger stock had rebounded to $23.90, $.20 above the closing price on the day of the announcement. <u>Id.</u> On March 8 and 9, 2001, Kroger stock closed at $24.95 per share, $.63 above the pre-announcement price and $1.25 above the closing price on the day after the announcement. In fact, from the low of $23.00 per share, the stock recovered $1.95 in just two days. <u>See</u> <u>id.</u>

As the Court understands the complaint, Plaintiffs' 10b-5 claims are not based on the fact of the GAAP violations at Ralphs per se, nor do Plaintiffs appear to contend that Kroger officials should have been aware of the violations prior to September 2000. Rather, Plaintiffs contend that once Kroger became aware of the GAAP violations in September 2000, it should have immediately disclosed this information despite the fact, as Kroger points out in its papers, that it did not know of the magnitude of the violations nor how they would affect its financial picture. Plaintiffs claim that Kroger's failure to

---

[1] The Court may take judicial notice of the price of Kroger stock. <u>Grasta v. First Union Securities, Inc.</u>, __F.3d__, No. 02-16215, 2004 WL 178937, at *1 (11th Cir. Jan. 30, 2004).

5

disclose the GAAP violations resulted in the price of Kroger stock being artificially inflated during the class period, which ended on March 5, 2001 when Kroger finally did disclose this information. Furthermore, as a result of the GAAP violations, Plaintiffs contend that all of the public statements and SEC filings made by Kroger during the class period were materially misleading. See Consolidated Complaint ¶¶ 52-61.

As noted above, Kroger moves to dismiss the consolidated complaint on the grounds that Plaintiffs failed to plead scienter with sufficient particularity. Kroger further argues that dismissal of the complaint is appropriate because the alleged misstatements and omissions were not material as a matter of law. Defendant Pichler then moves to dismiss the claims against him as being derivative of the claims versus Kroger.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. In its consideration of a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the Plaintiff and accept all well-pleaded factual allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) and Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. Blackburn v. Fisk University, 443 F.2d 121, 124

(6th Cir. 1974).  A court will, though, accept all reasonable inferences that might be drawn from the complaint.  <u>Fitzke v. Shappell</u>, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

When considering the sufficiency of a complaint pursuant to a Rule 12(b)(6) motion, this Court recognizes that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-6 (1957).

The Private Securities Litigation Reform Act, however, has modified the pleading standard in securities fraud cases. The PSLRA requires the plaintiff to plead facts which give rise to a <u>strong inference</u> that the defendant acted with scienter, or intent to defraud.  <u>Helwig v. Vencor, Inc.</u>, 251 F.3d 540, 548 (6th Cir. 2001).  Thus, while the Court still accepts the pleaded facts as being true, the facts still must create a strong inference of scienter in order for the complaint to withstand dismissal.

### III. <u>Analysis</u>

The Court agrees with Kroger that the complaint fails to meet the pleading standards for scienter enunciated in <u>Helwig</u>. Moreover, the Court agrees that the alleged misstatements and omissions were not material.  Accordingly, dismissal of the consolidated complaint against both Defendants is appropriate.

In <u>Helwig</u>, the Court set out a number of non-exclusive,

non-exhaustive factors to consider when determining whether the plaintiff pled scienter sufficiently:

1) insider trading at a suspicious time or in an unusual amount;

2) divergence between internal reports and external statements on the same subject;

3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information;

4) evidence of bribery of a top company official;

5) the existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit;

6) disregard of the most current factual information before making the statements;

7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication;

8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and,

9) the self-interested motivation of defendants in the form of saving their salaries or jobs;

Helwig, 251 F.3d at 552.  In addition, the defendant's motive and opportunity for making the misstatement or omission is a relevant consideration.  Id. at 550.  Other courts have suggested that the magnitude of the error in the financial statement is a gauge of the defendant's scienter.  See, e.g., In re Rent-Way Securities Litigation, 209 F. Supp.2d 493, 506 (W.D.Pa. 2002).  In consideration of all of these factors, the Court finds that the consolidated complaint does not give rise to a strong inference of scienter.

Initially, the Court notes that there seems to be general agreement among the various courts that GAAP violations, standing alone, are insufficient to establish scienter. See In re MicroStrategy Securities Litigation, 115 F. Supp.2d 620, 634-35, 635 n.28 (E.D.Va. 2000)(cataloging cases); Druskin v. AnswerThink, Inc., __F. Supp.2d__, No. 02-23304-CIV-GOLD, 02-23304-CIV-SIMONTO, at *14 (S.D.Fla. Jan. 5, 2004)(same). Therefore, the mere fact of Ralph's GAAP violations, which Plaintiffs admit that Kroger was not aware of until September 2000, are insufficient by themselves to establish scienter. Furthermore, the magnitude or impact of the GAAP violations was nearly negligible. As shown above, the restatements of the financial reports resulted in a one cent decrease in earnings per share for 1999 and a one cent increase in earnings per share in 1998. See, supra, at 4. For the other six individual quarters identified by Plaintiff, the restatements resulted in a net downward adjustment in earnings per share of just two cents. Overall, the downward adjustments were practically de minimis - about a 1.5% change in the earnings reported. Compare with Rent-Way, 209 F. Supp.2d at 506-07 (scienter sufficiently pled; GAAP violations led to reporting a $.09 per share loss instead of a $.29 per share loss in 1998 and $.66 per share gain instead of a $.04 per share loss in 1999); MicroStrategy, 115 F. Supp.2d at 639 (scienter sufficiently pled; GAAP violation caused earnings

9

to be reported at $.30 per share instead of $.09 per share); <u>Rehm v. Eagle Finance Corp.</u>, 954 F. Supp. 1246, 1255 (N.D.Ill. 1997)(scienter sufficiently pled; GAAP violation caused earnings to be overstated by 91%).

  Another indicator that Kroger's earnings restatements were inconsequential is the fact that although the stock dropped $.70 (about 3%) the day after the announcement, by three days after the announcement, the stock had risen $.63 (about 2.6%) above its pre-announcement price. Within two days of closing at $23.00 per share, the stock rose 8.5% to $24.95 per share. The rapid rebound in price strongly suggests that the market quickly digested Kroger's restatements of earnings and found that the adjustments were not material. <u>See</u> <u>In re Allied Capital Corp. Securities Litigation</u>, No. 02 Civ 3812(GEL), 2003 WL 1964184, at *6 (S.D.N.Y. Apr. 25, 2003)("[T]he stock price's recovery, in the face of a general decline in the market, negates any inference of materiality, because it indicates that investors quickly determined that the 'new' information was <u>not</u> material to their investment decisions.")(emphasis in original). Thus, the consolidated complaint itself demonstrates that the GAAP violations were of no magnitude.

  The consolidated complaint is mostly devoid of the factors which indicate scienter as set forth in <u>Helwig</u>. There are no allegations of insider trading by any Kroger executives.

There are no allegations of bribery of top company officials. There are no allegations that Kroger reported information in a manner which made it unintelligible to the unsophisticated. There are no allegations that Kroger officials acted out of self-interest. Kroger did not disregard the evidence of the GAAP violations. To the contrary, Kroger investigated the matter and adjusted their financial statements accordingly. Except for the fact that the financial reports were incorrect because of Ralphs' GAAP violations, there are no allegations that there was a divergence between internal reports on earnings and the earnings actually announced by Kroger. In other words, there are no allegations that Kroger knew of the likely impact of its financial restatements and publicly made statements to the contrary. The only motive for Kroger to conceal the need to restate its financial reports suggested in Plaintiffs' papers is that Kroger wanted to meet analysts' earnings forecasts in order to appear to be an attractive investment. However, this motive appears to be insufficient as a matter of law to establish motive for purposes of pleading scienter. See In re Healthcare Compare Corp. Securities Litigation, 75 F.3d 276, 284 (7th Cir. 1996); Florida State Bd. of Admin. v. Green Tree Fin. Corp., 270 F.3d 645, 664 (8th Cir. 2001)("The desire to maintain a high credit rating is universally held among corporations and their executives and consequently does not contribute significantly to

11

an inference of scienter."); <u>In re Party City Securities Litigation</u>, 147 F. Supp. 2d 282, 314 (D.N.J. 2001) ("The desire to satisfy investors and lenders as to a company's financial soundness is insufficient, by itself, to demonstrate scienter" because "every public company seeks to satisfy its investors and lenders by demonstrating its financial soundness").

In short, the consolidated complaint does not create a weak inference of scienter, much less a strong one. Therefore, dismissal for failure to plead scienter with sufficient particularity is appropriate. Furthermore, as discussed above at 8-10, <u>supra</u>, the adjustments Kroger did make to its financial statements were so small and had so little impact on the price of the stock, that Kroger's alleged omissions and misstatements were immaterial as a matter of law. Therefore, dismissal on this basis is appropriate as well. Finally, because Plaintiffs' claims against Kroger are subject to dismissal, the derivative control person claims versus Defendant Pichler should be dismissed as well. <u>In re Comshare, Inc. Securities Litigation</u>, 183 F.3d 542, 554 n.28 (6th Cir. 1999).

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is well-taken and is **GRANTED**. The consolidated complaint is **DISMISSED WITH PREJUDICE** as to both Defendants.

**IT IS SO ORDERED**

Date  February 10, 2004                    s/Sandra S. Beckwith
                                                          Sandra S. Beckwith
                                        United States District Judge